Your Honor, this is the first case of the afternoon. Call 210-0911. Warren and Mose v. Glen Lake Investments, Aspen Investments, et al. On behalf of the attorney, Mr. James Bach. On behalf of the attorney, Ms. Margaret Portia. Mr. Bach. Good afternoon. May it please the Court. This is the third trip to the appellate court for this case. And for purposes of sort of framing the issue back in the second appeal that resulted in the Rule 23 order that's attached in the separate appendix as the first 41 pages of that appendix. It was noted by the Court that the Mose Trust, Mr. Mose, now the Mose Trust, he's passed away. Was the only party that challenged the bona fide purchaser status claim of Aspen Partners, the subsequent purchaser of the tax deed. Counsel, would you kindly adjust the microphone so it's pointing up a little? Thank you. Sorry. This case involves that bona fide purchaser issue. And I'd like the Court to consider, because it really illustrates the issues that are being presented here today, what the trial court said when it was making its ruling after the trial on remand here. Judge Dunn stated, said that in fashioning a remedy, he posited this Mr. Hypothetical person, Mr. Joe Smith, who is living in a townhouse on this property, who thinks he owns the townhouse, but no. All of a sudden, the Court comes and tells him that, no, you don't own this land anymore. You have to give back this townhouse. You don't own it anymore. And the Court stated that that would be the ultimate cruelty. That would not be justice. That could not be done. And he noted that none of the parties had suggested that all of these sub-subsequent purchasers would lose their property, which was part of the reason that there were MAI testimonies presented by three of the parties to this case. If we declare that there are no bona fide purchasers, and Joe Blow or John Q. Public is subject to your recapture agreement, what's wrong with that decision? Well, the only practical effect of that decision would be then, you know, returning the property to its prior owner and unwinding all of the mortgages and deciding what the value of the new improvements that are situated on the premises that weren't there. Because at the end of the day, as I indicated in my discussion of damages, the Saris case states that damages, the purpose of damages is to put the injured party in its equivalent rightful position. And for our purposes, frankly, all of the petitioners in this case recognized that a court of equity in fashioning a remedy would not throw all of these people that are in these hundred or so townhomes out of their townhomes and return the property to us. And as a result, the approach was for my client and the others to present evidence as to what a proper measure of damages would be for the wrong that was committed. And there was a wrong committed because there was evidence presented even more substantial in the trial on remand that Aspen Partners was not a bona fide purchaser. In fact, what was the nature of the damages that you were seeking? The damages that my client was seeking was the value of the fair market value of the property as of November 1st, 2005, which was a date that we showed in the evidence. The property was still unoccupied and vacant. There were no improvements on the property, and it could have been returned by the court at that point in time to its prior rightful owner. But you weren't a prior owner. You were merely a party interested, or the trust's predecessor had an interest in the land, but it wasn't fee titled. So why are you asking for fee titled damages? Because my client had that contract interest in the property and also had an interest in a partnership that was established for the development and sale of that property. And had there been a breach of that agreement, what damages would you have proven up? Of the partnership agreement? Whatever it was that there was a breach of, the interest that you held, or Mr. Moe's did, what were the monetary damages? I can tell you that I wrote the prior decision or two, and when it was written, it never suggested that you had a fee title interest or your predecessor had a fee title interest. It was that you had an interest in the property that entitled you to notice. It didn't say that you were a fee owner. So for you to ask for damages based upon being a fee owner, this court never said that. I don't know what the trial court said, but on appeal, this time, you're claiming that you're entitled to fee owner damages. No, I'm not claiming that Moe's is entitled to fee owner damages because, as I stated in my briefs, the contract interests we have are through the Clavey Trust. The Clavey Trust was the fee owner, and the Clavey Trust receiving the fair market value of that property ensures that my client, all of its interests are fully paid. And that's the basis. We, in fact, were a party, a petitioner in this case, and it was our position, and it is our position, that because we didn't receive notice, and as well as some of the other petitioners that received notice, that tax deed order was void. And that really is the problem that Aspen Partners had, and they understood that before they even bought the property. Didn't they take subject? Didn't they tell the title company they were going to take subject to whatever interest you might have in the property? Apparently, that's what they told the title company, but they made sure they did something rather astounding, at least in my experience, and I admit I have limited experience, I've only been practicing for 33 years, but Glenn Taxman, the attorney for Aspen Partners, managed to get a title company to actually issue a title insurance policy for the transaction where Aspen Partners bought this property before it even closed. Before it even closed. And the testimony of John Thomas, one of the two partners of Aspen Partners, at the trial on remand was that, in fact, he had gone to the court record and checked the tax deed proceeding in the transcript, and he had had in his hand a copy of the title commitment showing Moses' interest as an exception to title. And he also said that he sat down with Seymour Taxman and his son, the attorney for Aspen Partners, and they discussed the exception to title and decided, well, we can live with it. And they went ahead and got a title insurance policy before they even closed the transaction. With an exception to title listing your interest? Correct. I used to work for the title company, a law firm, and when I say the title company, I mean Chicago Title Trust, before it changed its name to CTI. So I'm aware of what you're talking about when it comes to title insurance and whether or not an exception that's listed in a title insurance policy has, what effect it has on the legal title, so to speak. All they're doing is they're ensuring that if somebody like you or your client decides to raise a stake, that they will cover something. It doesn't mean that the Aspen Partners has a warranty deed that they can file. Right. No, and that's correct, Your Honor. And that's the reason, as the transfer to the Jacobs Homes affiliate that we put in the record on November 22, 2005, was by a special warranty deed. They couldn't give them a warranty deed. My problem with your appellate brief was I could never find anything other than seeking damages that a fee owner would be claiming, and you don't have a fee ownership interest. And so can you tell me, assuming arguendo, that your interest relates to a recapture agreement and the breach thereof, what you think the damages may or might have been or are? Yes. Actually, we put in the record the appraisal of John Mundy, who valued the property at its fair market value as of November 1, 2005. And that value was at $16,900,000. The damages would be, if the court found that that was the fair market value of the property that was essentially taken by what occurred here, would be that $16,900,000 less the $4.1 million that the court had granted as the relief. In the Clayton Trust petition, less anything that was done or expended by Aspen Partners in changing the zoning of the southern 10 acres of that property. But again, it was vacant property. Do you mean roughly $11 million that your client was damaged because of a recapture agreement breach? My client and the other parties to the Aspen Place Limited Partnership, yes. No, not the other parties, just you, because the other parties got a judgment and they didn't appeal it. I'm concerned about you or your clients. My clients had a 6.4% interest in the Aspen Place Limited Partnership that was for this property to develop. So we're talking 6.4% of $11 million, roughly? Roughly that, plus whatever other costs are not and have not been paid relating to the recapture agreement. And how long did the recapture agreement last? Until it was paid. It had no expiration date? No, it was for the property until it was paid or until there were permits issued and construction began and improvements on the property. Didn't Mr. Mowes file a lawsuit and was that dismissed? Yes. And wasn't that in relation to seeking damages based upon the recapture agreement? As to the subsequent parties, yes, Your Honor. As to the subsequent parties, but not necessarily to the Claybee Trust? No, they weren't entitled. There had been a tax deed that had been issued to the defendants that were the parties in that other lawsuit that you're referring to. The defendants were Glenn Investments and the Wayne Homer Trust and Aspen Partners. And this court found that because there was a contract between Mr. Mowes and the Claybee Trust, that there could be no equitable implied contract because there was an express contract. So am I correct in assuming that your client never sued Mr. Claybee or the Claybee Trust to determine what the amount of damages was that Claybee Trust owed, which could be satisfied out of the sale or the execution on the property, which supposedly was based upon a transfer to Aspen Partners, which as a not a BFP would entitle you to satisfy whatever judgment you had against the Claybee Trust from a sale of the property? If there had been a sale of the property such as you described, you know, that could have and would have been done. But, you know, in this instance, there never was a sale of the property. And here we are eight years later in this particular tax deed case. Well, I thought there was a sale to the extent there was a sale of $4 million. Right. I mean, you know what the trial court found was the value and satisfaction. The trial court didn't find that that was the value of the trial court simply said, I think the appropriate thing to do here would be to discords the $4.1 million that was paid in that back alley sale that was done between Wayne Homer Trust and Aspen Partners. In other words, they got no profit out of the deal. So what happened? They didn't. They only got a fraction of the value of the property. And that was the testimony of Mr. Marose at the trial and remand that the property is in the first trial. And I put on Mr. Siegel, who said the property was worth $7.485 million on May 7th, March 7th, 2003. Mr. Marose in the trial and remand said that the property on March 7th, 2003 was worth $7.5 million. And those were the valuation numbers that were in front of the judge. There was also an appraisal from Mr. Kulczynski. It was put on by Glen investments who said that the property was worth $4,030,000 as of the date of the tax deed. And the judge said that the property was worth $4,030,000 less than the amount that Aspen paid for a title that wasn't clear. And our position, Your Honor, is that since the property, the net effect of the tax deed order by the judge on remand is to give clear title to property that they never had clear title to, that the measure of damages should have been the fair market value of the property. It was our position that it should have been the fair market value of the property as of November 1st, 2005, when it still could have been returned to the Clavey Trust. Could you define what you meant when you said clear title? You know, I think the context might be a little different than this. You know, maybe We're have a clean title and you can pass warranty deed. We have fee. Simple, absolute. And there aren't any claims against. The property. They cloud the title, which there have always been here because. Mr. Mose was never given any notice of the tax deed proceedings that started. The previous transfers. Is clear title, a concept of insurance law or. Concept of real estate title law. I would assume that it's a man. It's a it's a function of both of the laws, your honor. What context were you using in it? In the context of real estate law, your honor. Because my my my client was a partner with the owner of that property, the rightful owner of that property. In the development of that property. And the further questions. Thank you. You have an opportunity for a vote. Thank you. That's in your report. So I represent Aspen partners. It's important, I think, to note in this appeal that they dropped the appeal against Glenn Investments, who was the tax purchaser, were the subsequent purchaser from Glenn Investments for $4.1 million. I think the whole issue of bonafide purchaser is really irrelevant to the most case. Everybody, including the trial court, agreed you cannot return the property. Did Mr. Bach agree? Yes, everybody agreed that fact and that the issue was that. Going to be, if it was going to be void, what the damages were. The only person that was entitled to damages was the title holder. Claiming trust. Again, they've conceded that. They've conceded that they're not entitled to the damages. Well, he claimed he was a partner, or his claim was a partner. Well, there was a partnership agreement that was put into evidence. But that was never, title of the property was never transferred to that partnership. It was never became effective. It was to become effective upon the first sale of the property. They were going to put it in there, and that never happened. So, the title holder was only Clavey Trust. Moe's brought this petition as, or because they claimed to get a recorded interest pursuant to the recapture agreement. And you asked about the damages in the recapture agreement. The damages in the recapture agreement were approximately 90,000 in principle. For putting a sewer line in. So, the fact is that a reward of $3.8 million to Clavey is certainly more than enough. Even if you had interest, or if they're in charge of attorney's fees, more than enough to make their contractual claim against Clavey and get their money back. But the bonafide purchaser is not an issue with the Moe's case. Because he can't get the property back for the title holder. Because everybody agreed that that couldn't happen. And on the Clavey Trust and Bank One, the mortgage holder. Upon the first appeal, didn't appeal the issue of bonafide purchaser. And on the second trial, didn't contest the fact that Aspen Partners was a bonafide purchaser. Didn't seek damages against Aspen Partners. So, the trial court looked at it and said, okay, what are the damages? And I think under 1401A, which allows any type of relief, equitable or otherwise. Certainly, the trial court had a right to fashion whatever you thought was appropriate relief in this case. And considering in the Clavey case, that there was no issue of bonafide purchaser, no asking for damages against Aspen Partners. Remember, these cases were only consolidated for trial and discovery. They were not consolidated for all purposes. So he had to award a judgment in each separate petition. And the Clavey Trust petition, he awarded the disgorgement of the $4.1 million. Which we had argued throughout the whole trial was the fair cash market value. What a reasonable buyer would pay and what a reasonable seller would accept. Often the best indication of that is a recent sale. He had a sale of $4.1 million for a piece of property that had a very, very long history of development problems. So, the issue that is, I can't figure out a scenario where they can get what they're asking you for. The judgment in the Clavey case is closed. They're not a party to that. They didn't appeal from that. They couldn't though, because they weren't a party to it. Both Clavey and Glenn Investments dropped their appeals. That's a final judgment. They have no right to collaterally attack it.  So the only thing that you could do is change, is do something in the Moe's case. Where everybody agrees that he's not entitled to damages. The trial court said, I'm giving the damages to Clavey Trust. If Bank One, who had the mortgage, or Moe's, who had the recapture agreement, or if he thinks he's somehow entitled to damages under this partnership agreement. They then go to the Clavey Trust and say, hey, where's my share? Because the trial court wasn't going to divide it up, which I think is proper. So the question becomes, is under what scenario could this court, he can't enter damages against Aspen Partners in the Moe's case. Because they're not entitled to damages. So, and Glenn Investments isn't even a party anymore. So what would happen on remand? Well, I thought that Mr. Bach's argument was that at least the nature of the relief he was claiming was as a fee owing. I think he conceded on page seven of his reply brief. Moe's Trust has never asked or demanded that the court of these tax proceedings make a specific dollar amount award of damages to the Moe's Trust. Any amounts due and owing Moe's Trust are a matter of contract between Moe's Trust and Clavey Trust, the other party to the recapture agreement. And in the trial court, they never sought and never asked for damages in their case. They never asked for an amount of money? Not in their petition. Did they ask for a share of the pie? Nope. Did they ask for free tickets to the Bozo Circus? I mean, what relief did they seek? They sought to have the tax deed vacated and that the amount of the judgment, the damages be their appraised amount. We had three appraisals. Glenn Investment put on Klesinski a data value on the day of the issuance of the tax deed at $4,300,000. Glenn Investment put on Mr. Maroos for a data value of March 7th, 2003, which is the approximate date of the sale of the system. That's $16 million, is that what he wanted? That's what he said the fair cash market value was. Okay, well, if that's what he wanted, this $16 million, where did he want it to be apportioned, or how? I don't think he specified that, but I think it was clear that it would have been in the claim. He didn't specify it, but I think it's clear. No, I mean, he admits in his brief that he didn't ask for damages. He submitted that the fair cash market value was the appropriate damage that should be entered against Glenn Investments and Aspen Partners, and that they didn't have title. They never claimed an ownership interest. They claimed a recorded interest in which they should have gotten notice. So, but I think any way you look at it, let's say that somehow there is an issue of damages. Let me ask one question. Sure. Didn't he more or less confine his argument to the recapture agreement, damages arising from the recapture agreement, not going back to the Claybee Trust appraisal of 1114 or whatever it was. But whatever the Claybee Trust got, and the relationship between that money and the recapture agreement, they say that's what they wanted at the trial court level. They never asked for that, and they never put in specific amount of their damages under the recapture agreement, and didn't ask for damages in that amount, and that they should be assessed. And the trial court very clearly said, I'm not here to assess the rights of contractual rights between the parties. Bank one's right under their mortgage, or Moe's is right under the recapture agreement. It said that's beyond a tax deed proceedings. I am here to say, what relief could you get? The only relief that Mr. Moe's could get in a tax deed proceeding, let's say it could return the property, would be an order vacating the deed, and an order that the title to the property be put back in the Claybee Trust. That's the only, now since we couldn't, the trial court said since we can't return the property, all you're entitled to is an order vacating the tax deed. I'm giving the damages to Claybee Trust, because they're the title holder, and you can seek your contractual damages against Claybee Trust. Because remember, the petitions are separate. So Claybee Trust is not a party to the Moe's petition. So the trial court said, I'm not here to proportion that out. I'm here to determine if you can't give the property back, what is the proper measure of damages to Claybee Trust? And he did that, and that's a final order, and it can't be changed. And Mr. Moe's is not entitled under any scenario to an order, in this case, for damages against Aspen Partners. And I think that the way the trial court assessed damages was appropriate under the statute that gives us broad discretion, and it's certainly not an abuse of discretion the way he did it. He said, you got $4.1 million, you should give that to, give that back, less the taxes and all the other statutory amounts. I'm reading the conclusion in the appellant's brief, and I don't really see that it, It corrects anything against you. Well, that's, it's confused, I frankly was confused by this whole case. I was confused by how he can seek relief, in my opinion, in a case that he's not a party to in this final judgment. He's now wants to go, somehow go back and remanded for the trial court to determine damages based on a fair cash market value. Well, how does he enter a judgment on that in the Moe's case? He can't. So, none of this makes any sense to me, frankly. If you have any other questions, I'll be happy to answer that, but I think I've about covered everything. Thank you. Thank you. I was thinking, by the way, but I can't think of anything else to ask. Okay. Thank you. Mr. Bach, I'm- With respect to the non-apportionment, I think it would have been beyond the judge's authority to do that, frankly. The Supreme Court's loop mortgage case said that he shouldn't be doing that, in terms of the contractual things. And I know that the JPMorgan Chase attorney asked for that in closing arguments. And he asked for what authority he could do that and determine what amounts could be awarded to the mortgage holder. And not knowing what any set-offs might be, frankly, he couldn't do that. The relief we asked for was for the fair market value of the property, to the owner of the property. It's been indicated, well, that partnership never vested. Frankly, there was evidence presented by the testimony of Mr. Sheridan, a partner in Hamilton Partners, that Hamilton Partners had invested more than a million dollars attempting to develop this property with the village of Vernon Hills. Based upon what you say, how do you have standing to stand in the shoes of the Clavey Trust and demand a greater award or a fair market value, such that maybe there might be a judgment in excess of the $4.1 million that the judgment was ultimately entered for? Well, I believe that the property tax code gives me standing, as someone with a recorded interest in that property, that gives me standing in any tax deed case like this, which I have preserved throughout this tax deed case. And that's where my issue with what the trial judge did is that he never did determine the fair market value of the property, which is what you're supposed to do and what the level or the measure of damages is when you can't give the property back to someone. It seems like you had two interests. One was the recapture agreement and the other was the interest that would entitle you to redeem the property had you been given notice, or redeem the taxes. Pay the taxes and redeem the property. How do either of those two interests have anything to do with what the fair cash market value is, unless you first get a determination as to what the value of your recapture agreement is, either through stipulation or trial, with the party with whom your client or predecessor agreed to or agreed with? Actually, my claims relate to what we have, as they always have, through our contracts with the Clavey Trust. And as I indicated to the trial court in closing argument, anything that we have relating to our agreements with the Kid Clavey Trust are between us and the Clavey Trust. It says you're a special assistant state's attorney. Can you explain what that means in the brief that you filed? I'm sorry, that would have been a mistake in not removing that from when a cut and paste was done. Okay. I'm here as a private attorney or whatever. Okay. That would have been a mistake. It doesn't say that in the front of the brief, but it does say that in the signature page. And I was just curious as to whether that might relate to an additional interest that I wasn't aware of. No, that's a mistake. I copied the signature page from the Donovan brief when I was representing him six months before in this court, the county. Okay. But it's my position, your honor, that the measure, the proper relief in this case with respect to what issues have been preserved throughout, in this case, was a determination by the trial court of what the fair market value of the property was. And awarding that loan to the Clayton Trust to preserve my client's rights in the property that are indicated by the rights that they had to file the petition under 1401. Just out of curiosity, let's assume that you sued the Clayton Trust and you established in that litigation that the fair market value of the property was $10 million. And you got a judgment for whatever percentage of that was. I think you said 6%, so what is that, $600,000? Approximately, yes. How would you satisfy that via Aspen Partners? I don't have a contract with Aspen Partners. Historically, what did the property go for as a sheriff's sale? There was no sheriff's sale on this one, your honor. This was simply a tax deed for- A tax sale. The tax, the court ordered the petition- There was never a petition to convert the tax deed to obtain the title of the property. Yes, there was, and there was a 214-01 motion filed by the Clayton Trust. And Mr. O's and- The bank also filed- The bank, and there was some questions about whether or not there was proper service and whether or not there was proper inquiry. And we found that there wasn't a proper inquiry and notification of Mr. Moe, because he did have a redeemable interest in the property. So there was never a sheriff's sale, and obviously, no court confirmed the sheriff's sale. No, your honor. So the Clayton Trust somehow got the title to the property. No, the Clayton Trust always held the title to the property. Glenn Investments, the tax buyer, got the title to the property. And Glenn Investments was the one that didn't do all the things that should have been done. I don't understand how a tax buyer can get a title to the property without going through the statutory procedure for obtaining a fee simple title to the property. They did. Merely owning the, buying the tax certificate gives you nothing but your right to interest for a couple of years and the right to file a petition to get a fee titled. After that, it's worth nothing. You don't get titled to anything by just buying a tax certificate. No, the trial court initially granted a tax fee to Glenn Investments, who then sold it to Aspen Partners, who then turned around and sold it to some third party. And while this was going down or transpiring, the 214-01 motion or petition was filed seeking to vacate the issuance of the tax fee. And the trial court denied the vacation. It came up on appeal. I think we found that there were material issues of fact. Went back down. There was another ruling and we found that there was error and that the tax fee should have been vacated. Okay, so the petition was filed under the certificate and a tax fee issue. So there wasn't any foreclosure of a lien or anything like that that required a share of state. No. So the holder of the certificate was Claybee Trust and- No, that was a fee owner who was delinquent in their taxes. Okay, then who got the- Glenn Investments bought the delinquent taxes. Then Glenn Investment, when they got the tax fee, got titled, retitled to the property under the tax deed. So now Glenn Investment has the title and Claybee Trust has nothing, right? Because they failed to redeem the tax certificate. So how did Claybee, apparently somebody, how did Claybee get the $4 million? Claybee, after Glenn Investments flipped the property to Aspen Partners, Claybee Trust filed a 1401 petition seeking to vacate the tax deed. Okay. And that's what's been going on for the last six, seven years. Those challenges to the tax deed and the rulings from the trial court in this court. And is that proceeding a part of this proceeding, that continuation? They were all consolidated for trial back in July and August of 2010. We had a three week trial when all of those petitions were heard at the same time. And this is one of the three orders that the trial court entered at the close of those consolidated petitions. And that's what I have appealed from to this court, arguing that the trial court did not find Aspen was not a bona fide purchaser and did not impose the correct relief, the measure of damages, being the fair market value of the property since his order essentially gives clear title, clean title to the subsequent purchasers, or they didn't have it before. That was our position, and that's what we've submitted to this court. Any other questions? No. Okay. No. Thank you. In case we've taken our advice on. Court's adjourned.